IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| APRIL M. DAVIS, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. TJS-16-3679 |
| CAROLYN SKIPWITH, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \*

**MEMORANDUM OPINION**

Pending before the Court are the parties' cross-motions for summary judgment (ECF Nos. 102 & 103) and the Plaintiffs' motion to remand (ECF No. 104) and motion for default judgment (ECF No. 105).[1] Having considered the submissions of the parties, I find that a hearing is unnecessary. *See* Local R. 105.6. For the reasons set forth below, the Defendants' "Partial Motion to Dismiss and/or for Summary Judgment" (ECF No. 102) will be granted, and the Plaintiffs' motion for summary judgment (ECF No. 103), motion to remand (ECF No. 104), and motion for default judgment (ECF No. 105) will be denied.

**I.  BACKGROUND**

This case arises from an incident that occurred on October 18, 2015, when James D. Golladay ("Mr. Golladay"), a disabled individual using a wheelchair, was picked up at his residence by Carolyn Skipwith ("Skipwith"), who was driving a transport van for Transdev Services, Inc. ("Transdev"). (ECF No. 48.) Plaintiffs allege that while the transport van was on the way to its destination, Skipwith negligently slammed on the brakes. (*Id.* ¶ 6.) As a result of

---

[1] On April 14, 2017, this case was referred to me for all proceedings, pursuant to 29 U.S.C. § 636(c) and Local Rule 301.4. (ECF No. 46.)

the sudden deceleration, Mr. Golladay was thrown from his wheelchair to the floor, which caused him to sustain a leg fracture and other injuries. (*Id.* ¶¶ 7-8.) He died on October 26, 2015, because of complications stemming from his injuries. (*Id.*)

On June 13, 2016, the Plaintiffs, April M. Davis, Helen K. Usual, and James D. Golladay, Jr., having been appointed the personal representatives of the Estate of Mr. Golladay, filed a lawsuit in the Circuit Court for Prince George's County, Maryland ("Circuit Court") against Skipwith and Transdev. (ECF No. 2). On September 8, 2016, WMATA filed a motion to intervene (ECF No. 6), which the Circuit Court granted on November 1, 2016 (ECF No. 15). On November 10, 2016, WMATA removed the case to this Court pursuant to Md. Code, Transp. § 10-204(81), which provides that federal district courts have original jurisdiction over actions against WMATA and that any such action initiated in a state court in Maryland, Virginia, or the District of Columbia may be removed to federal court. (ECF No. 1.)

After the case was removed to this Court, on March 30, 2017, Judge Messitte held a motions hearing. (ECF No. 43.) During the hearing, the Court considered the issue of Skipwith and Transdev's agency in the context of Plaintiffs' motion to remand (ECF No. 26). Plaintiffs argued that because Skipwith and Transdev were not agents of WMATA, WMATA had no basis to remove the case under the WMATA Compact, and that the Court therefore lacked subject matter jurisdiction. The Court denied the motion without prejudice in order to allow the parties to engage in discovery and to present their arguments in motions for summary judgment after the completion of discovery (ECF No. 60 at 37-39). *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (explaining how courts evaluate disputes regarding the existence of subject matter jurisdiction). After the hearing, Judge Messitte granted Plaintiffs leave to file their Second

Amended Complaint, and entered a scheduling order so that the parties could engage in full discovery. (ECF Nos. 43 & 44.)

The parties have now completed discovery and raise the same issues previously considered by Judge Messitte. Plaintiffs argue that because Skipwith and Transdev were not WMATA's agents, the case must be remanded to the Circuit Court because this Court lacks subject matter jurisdiction. WMATA argues that the Court has subject matter jurisdiction, and that the claims against Skipwith and Transdev should be dismissed with prejudice, with WMATA to remain as the sole defendant.

Ordinarily, the burden of proving subject matter jurisdiction rests on the party asserting jurisdiction. *Adams*, 697 F.2d at 1219. Similarly, the burden to show the propriety of removal rests on the party invoking removal jurisdiction. *Gables Residential Servs., Inc. v. Harris*, No. JKB-16-1904, 2016 WL 3997313, at *1–2 (D. Md. July 26, 2016). Accordingly, as the party that removed the case to this Court, and as the party asserting that this Court has subject matter jurisdiction, the burden rests on WMATA to show that removal was proper and that this Court has subject matter jurisdiction.

Where "jurisdictional facts are so intertwined with the facts upon which the ultimate issues on the merits must be resolved, the entire factual dispute is appropriately resolved only by a proceeding on the merits." *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009) (internal citation and quotation marks omitted); *see also Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) (recommending that disputed jurisdictional facts that are intertwined with the merits should only be resolved "after appropriate discovery," and through the "application of a Rule 12(b)(6) or Rule 56(c) standard," rather than the "less-stringent Rule 12(b)(1) standard"). In light of the Fourth Circuit's guidance in *Vuyyuru* and *Kerns*, the Court will apply the more

3

rigorous Rule 56 standard, rather than the less-stringent standard of Rule 12(b)(1), to resolve the disputes regarding the Court's subject matter jurisdiction.

## II. DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest upon the mere allegations or denials of its pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

### A. Agency

"WMATA was established by an interstate compact among Virginia, Maryland and the District of Columbia to provide a regional system of transportation for the Washington, D.C.,

metropolitan area." *Delon Hampton & Assocs., Chartered v. Washington Metro. Area Transit Auth.*, 943 F.2d 355, 357 (4th Cir. 1991). In Maryland, the compact is codified at Md. Code, Transp. § 10-204 ("WMATA Compact"). The signatories to the compact conferred upon WMATA each of their respective sovereign immunities, including the immunity from suit in federal court afforded to Maryland under the Eleventh Amendment. *Fulcrum Int'l, Inc. v. Prince George Ctr. I, Inc.*, 503 F. App'x 193, 194–95 (4th Cir. 2012) (citing *Watters v. Wash. Metro. Area Transit Auth.*, 295 F.3d 36, 39 (D.C. Cir. 2002)). Pursuant to Section 80 of the WMATA Compact, however, WMATA has waived its immunity in certain circumstances:

> The Authority shall be liable for its . . . its torts and those of its . . . employees and agents committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such . . . torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority.

Md. Code, Transp. § 10-204(80).

The central dispute in the parties' motions is whether Skipwith and Transdev were agents of WMATA on October 18, 2015 (the date of Mr. Golladay's injury). Plaintiffs contend that they were not WMATA's agents; WMATA argues that they were. In support of their position, Plaintiffs rely on the language of the WMATA Compact, as well as the contract between Transdev and WMATA, and the positions that WMATA has taken in prior, unrelated litigation.[2] WMATA relies on the legal presumption in Maryland that the driver of a vehicle is the agent of the vehicle's owner. Resolution of the issue of agency at this stage is essential. If Skipwith and Transdev were not WMATA's agents, this Court lacks subject matter jurisdiction because the WMATA Compact only grants this Court original jurisdiction over actions against WMATA and

---

[2] Plaintiffs make much of the fact that Skipwith was not WMATA's employee. This fact is not in dispute and is not dispositive to the issue of whether Skipwith was WMATA's non-employee agent. The Court will not address it further.

its agents. Md. Code, Transp. § 10-204(80), (81).

The following material facts are not in dispute by the parties. At all relevant times, Skipwith was an employee of Transdev, a company that is organized independently from WMATA. Skipwith was not an employee of WMATA. On October 18, 2015, Skipwith was operating a transport van owned by WMATA in the course of her employment with Transdev. Transdev, in turn, had contracted to provide Metro Access[3] service to WMATA. Skipwith's operation of the transport van on the date in question was in furtherance of WMATA's paratransit business. Additional facts, none of which are genuinely in dispute, are included in the Court's discussion below.

### 1. Judicial Estoppel

Before turning to WMATA's argument regarding the status of Skipwith and Transdev as its agents, the Court will consider Plaintiffs' assertion of judicial estoppel. Plaintiffs contend that WMATA is barred from arguing that Skipwith and Transdev were its agents because of arguments and evidence it has submitted in previous cases. (ECF Nos. 103-1 at 7-8 & 106 at 2.) Plaintiffs cite *Lorraine Savadge v. WMATA, et al.*, a case filed in the Circuit Court under case number CAL15-25182. In that case, WMATA filed an affidavit of Donald Scruggs, the Assistant Director for Metro Access services. (ECF No. 103-6.) The affidavit identified Defendant MV Transportation, Inc. as "an independent contractor of WMATA." (*Id.*) The affidavit went on to state that MV Transportation, Inc. "hired employees to be tasked in the role of driver for Metro Access," and that these employees were employed by MV Transportation, Inc., and never by WMATA. (*Id.*) WMATA apparently relied on the assertions in this affidavit to support its argument that it could not be liable for the negligence of the employees of MV Transportation,

---

[3] Metro Access is WMATA's shared ride transportation service for passengers who are unable to use fixed-route public transit due to disabilities.

Inc. Plaintiffs argue that the role of MV Transportation, Inc. in the prior case is analogous to the role of Transdev in this case.

Plaintiffs also cite the case of *Andrews v. WMATA, et al.*, 819 F. Supp. 2d 7 (D.D.C. 2011). There, WMATA again took the position that MV Transportation, Inc. was an independent contractor, and that WMATA was not liable for the negligent acts of that company's employees. Notably, the status of MV Transportation, Inc. was undisputed in that case. *Id.* at 10 ("It is undisputed that MV is an independent contractor[.]"). Plaintiffs state that WMATA also took a similar position in the case of *Bethea v. Mills*, case number CA-010051B in the Superior Court for the District of Columbia. (ECF No. 103-1 at 8.) Plaintiffs argue that WMATA's admission "time and time again that Metro Access drivers [such as Skipwith and Transdev] are not employees or agents of WMATA" should bar WMATA from taking the opposite position in this case under the doctrine of judicial estoppel.

Judicial estoppel is an "equitable doctrine that exists to prevent litigants from playing 'fast and loose' with the courts—to deter improper manipulation of the judiciary." *Folio v. City of Clarksburg, W. Va.*, 134 F.3d 1211, 1217 (4th Cir. 1998) (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28–29 (4th Cir. 1995)). The Fourth Circuit has established that "three conditions must be met by a party to invoke successfully the doctrine of judicial estoppel." *Topline Sols., Inc. v. Sandler Sys., Inc.*, No. ELH-09-3102, 2017 WL 1862445, at *27–28 (D. Md. May 8, 2017). First, "the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation," which "must be one of fact rather than law or legal theory." *Id.* (quoting *Lowery v. Stovall*, 92 F.3d 219, 223-24 (4th Cir. 1996)). Second, "the prior inconsistent position must have been accepted by the court" in the prior litigation. *Id.* Third, "the party sought to be estopped must have intentionally misled the

7

court to gain unfair advantage." *Id.* (internal quotation marks omitted). While each factor must be satisfied in order to support application of judicial estoppel, the "determinative factor" is whether the party sought to be estopped "intentionally misled the court to gain unfair advantage." *Lowery*, 92 F.3d at 224. "Without bad faith, there can be no judicial estoppel." *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007). Judicial estoppel is "invoked in the discretion of the district court and with the recognition that each application must be decided on its own specific facts and circumstances." *King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998).

Judicial estoppel does not apply here for two reasons. First, WMATA has not taken a position in this case that is inconsistent with a position that it has taken in prior litigation. In this case, WMATA argues that Skipwith and Transdev were its agents because the vehicle that Skipwith was operating at the time of Mr. Golladay's injury was owned by WMATA. However, there is no indication that WMATA owned the subject vehicles in any of the prior litigation cited by Plaintiffs. Because WMATA's argument regarding Skipwith and Transdev's agency status turns on the ownership of the subject vehicle, its position in this case is not inconsistent with the positions that it has taken during prior litigation. Second, the issue of whether Skipwith and Transdev were WMATA's agents is not an issue of fact, but rather an issue of law. It is true that the resolution of the agency issue turns on certain findings of fact, but these facts (the ownership of the vehicle involved in the incident and the terms of the contract between WMATA and Transdev) are not in dispute. What is in dispute is whether these facts establish Skipwith and Transdev as WMATA's agents. This is a question of law, to which the doctrine of judicial estoppel does not apply.[4]

---

[4] Plaintiffs' strongest argument regarding the doctrine of judicial estoppel concerns

The Court now turns to the substance of the parties' arguments. As explained below, the Court finds that Skipwith and Transdev were WMATA's agents at the relevant time for two reasons. First, Skipwith and Transdev were operating a vehicle owned by WMATA and in furtherance of WMATA's business at the time of the incident. They are thus presumed to be WMATA's agents under Maryland law, and Plaintiff has not rebutted this presumption.[5] Second, Skipwith and Transdev were WMATA's agents under Maryland's law of agency because WMATA had the right of control over Skipwith and Transdev "in respect to the work to be performed." *Beckham v. Nat'l R.R. Passenger Corp.*, 569 F. Supp. 2d 542, 556 (D. Md. 2008) (quoting *Baltimore Harbor Charters Ltd. v. Ayd,* 365 Md. 366, 780 A.2d 303 (2001)).

2.  **Presumption of Agency**

It is undisputed that the vehicle operated by Skipwith was owned by WMATA. While

---

WMATA's bad faith. While judicial estoppel does not apply in this case, the Court questions whether WMATA may have previously attempted to gain an unfair advantage before other courts. Plaintiffs cite several cases in which WMATA filed affidavits that stated that its Metro Access drivers were independent contractors, and used these affidavits as evidence that the drivers were not WMATA's agents. Notably, at least one of the affidavits (filed in *Andrews*) did not rely on WMATA's non-ownership of the vehicles involved in the case, but rather on WMATA's exercise of control over the Metro Access drivers. While WMATA raised the issue of vehicle ownership in its brief in that case (ECF No. 103-7 at 3), it was not WMATA's principal argument and was mentioned only in passing. In this case, the Court will examine the status of Skipwith and Transdev as agents under the argument advanced by WMATA, but also under the prototypical criteria for agency under Maryland law. Because the contracts that WMATA uses for Metro Access service providers appear to be somewhat standard (ECF No. 103-5 at 4), this Court's finding that the contract itself provides a basis for a finding of agency will hinder WMATA's ability to assert an inconsistent position in the future without a good faith basis for doing so. To WMATA's credit, the position that it has taken in this case is consistent with its position in *Meh v. Bruce*, No. GJH-16-465, 2016 WL 3129113, at *2 (D. Md. June 1, 2016), a recent case before this Court.

[5] Maryland law governs this case. The WMATA Compact provides that WMATA "shall be liable . . . for its torts . . . committed in the conduct of any proprietary function *in accordance with the law of the applicable signatory*." Md. Code, Transp. § 10-204(80) (emphasis added). In an unpublished decision, the Fourth Circuit has concluded "that this language establishes a *lex loci delicti* rule for tort claims." *Jones v. Wash. Metro. Area Transit Auth.*, 378 F. Supp. 2d 718, 721 (E.D. Va. 2005) (citing *Madison v. Wash. Metro. Area Transit Auth.,* 993 F.2d 228, 1993 WL 140531, *2 n. 3 (4th Cir. 1993)).

"mere ownership of a car does not impose liability for injuries caused in the driving of it," the relationship between the driver of a car and its owner may be grounds to impose liability on the owner. *Edwards v. Mayor & City Council of Baltimore*, 176 Md. App. 446, 461 (2007). In Maryland, there is a presumption that the "negligent operator of a vehicle is the agent, servant, or employee of the owner acting within the scope of his employment." *Nero v. Young Soon Ro*, No. DKC-11-664, 2011 WL 2181483, at *4 (D. Md. June 2, 2011) (citing *Williams v. Wheeler*, 252 Md. 75, 81 (1969)). The presumption rests on the common law doctrine of agency and is "is not limited to an employer-employee relationship, but covers any agency relationship, paid or voluntary." *Edwards*, 176 Md. App. at 462. The presumption "can be rebutted if the purpose of the trip was not for the benefit of the owner of the vehicle." *Raskauskas v. Leith*, 2013 WL 4659783, at *3 (D. Md. Aug. 29, 2013); *see also Toscano v. Spriggs*, 343 Md. 320, 325 (1996) (holding that where there was uncontradicted evidence that "the purpose of the trip was not for the benefit" of the vehicle's owner, the presumption did not apply); *Robinson v. Dunlap*, No. WMN-14-2563, 2014 WL 6698633, at *2-3 (D. Md. Nov. 26, 2014) (finding that because a defendant's purpose in using a government-owned vehicle was personal, the presumption did not apply). The evidence required to rebut the presumption as a matter of law "must be both uncontradicted and conclusive." *House v. Jerosimich*, 246 Md. 747, 750 (1967).

Here, Plaintiffs have failed to rebut the presumption that Skipwith and Transdev were acting as agents of the owner of the vehicle involved in the incident.[6] Skipwith was driving a

---

[6] Plaintiffs cite the cases of *Hood v. Azrael*, 167 Md. 641 (1934) and *Wood v. Barwood Cab*, 648 A.2d 670 (D.C. App. 1994) for the proposition that "[w]here the driver is an independent contractor the owner is not responsible." (ECF No. 106-1 at 2.) In *Hood*, Kermit Edmunds was driving a truck filled with coal when he collided with another vehicle. In deciding whether Edmunds "was, at the time of the collision, the servant of the defendant [coal supplier] or an independent contractor," the court considered that Edmunds "kept the truck, which had a capacity of two tons, on his own premises, maintained it in repair and in operating condition;

10

vehicle owned by WMATA at the time of the incident. She was driving the vehicle in the scope of her employment with Transdev, and her purpose was for the ultimate benefit of WMATA. Accordingly, Skipwith and Transdev are WMATA's agents under the presumption that the negligent operator of a vehicle is the agent of the vehicle's owner.

3. **Control**

Skipwith and Transdev were also acting as WMATA's agents because of the amount of control that WMATA exercised over them. "Under Maryland agency law, three characteristics have 'particular relevance to the determination of the existence of a principal-agent relationship: (1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent.'" *Danner v. Int'l Freight Sys. of Washington, LLC*, 855 F. Supp. 2d 433, 454 (D. Md. 2012) (quoting *Green v. H & R Block, Inc.*, 355 Md. 488, 503 (1999)). These factors, "rather than being determinative . . . should be viewed within the context of the entire circumstances of the transaction or relations." *Green*, 355 Md. at 506. "They are neither exclusive nor conclusive considerations in determining the existence of an agency relationship." *Id.*

The distinction between an agent and a non-agent independent contractor frequently "lies in the degree of control" exerted by the principal. *Lopez-Krist v. Salvagno*, No. ELH-12-01116, 2013 WL 5705437, at *12 (D. Md. Oct. 17, 2013). An independent contractor "is generally free to exercise his own judgment and discretion as to the means and assistants that he may think

---

bought all the oil, gasoline, and supplies at his own expense; and had possession of the truck and entire control of its use," but never specified who owned the truck. The court went on to find that Edmunds was an independent contractor of the defendant coal supplier, largely because of the lack of control that was exercised over Edmunds. *Hood* does not specifically address Maryland's presumption that the operator of a vehicle is the agent of the vehicle's owner. It has not been relied on by any court in more than 50 years, and the Court finds it of little persuasive value here as it runs counter to the prevailing law in Maryland. The other case, *Wood*, concerns the application of D.C. law to taxicabs and is wholly inapposite.

11

proper to employ about the work," exclusive of control by the principal. *Id.* Conversely, an agent is subject to the principal's control "in the performance of his work and in the manner in which the work is to be done." *Id.* (quoting *Kersten v. Van Grack, Axelson & Williamowsky, P.C.*, 92 Md. App. 466, 469 (1992)); *see also Brady v. Ralph Parsons Co.*, 308 Md. 486, 512 (1987) (holding that a "separate, distinct business, which ha[d] not surrendered control over its operation or the conduct of its employees" was not an agent under Md. Code, Transp. § 7-702).

Under the circumstances of this case, Skipwith and Transdev were under a sufficient amount of control of WMATA to be WMATA's agents. No reasonable jury could conclude otherwise. A copy of the Metro Access Contract ("Contract") between Transdev and WMATA is available online. (*See* ECF No. 40.) A review of the Service Delivery portion of the Contract reveals the extent of the control that WMATA exercised over Skipwith and Transdev. The Contract requires Transdev to provide Metro Access service delivery in accordance with the Contract. (Contract, Part VI, Section 2.) The Contract lays out in detail the required staffing for Transdev, the procedures that Transdev was bound to follow when delivering service under the Contract, the facilities that Transdev was required to maintain, and other issues. WMATA's exercise of control over Transdev is most apparent in Part VI, Section 3.14 of the Contract.

Plaintiffs correctly note that Transdev was responsible for hiring its own employees in connection with the Contract, and that those employees were deemed to be "under the sole control and direction" of Transdev, and would not be "deemed for any reason to be employees of WMATA."[7] (ECF No. 106-1 at 5-7 (citing Contract, Part VI, Section 11.3).) Under the Contract, however, WMATA asserted substantial control over Transdev and its employees. For instance, the contract specifies 14 types of training that Transdev's employees were required to undergo to

---

[7] This provision is consistent with Sections 51 and 52 of the WMATA Compact. Md. Code, Transp. § 10-204(51), (52).

"ensure that vehicle operators possess a complete understanding of the MetroAccess culture of service and safety, as well as passenger needs." (Contract, Part VI, Section 3.14.3.) The required areas of training included "Sensitivity/Disability Awareness," "WMATA/MetroAccess Policies and procedures," and "Defensive Driving." (*Id.*) As part of the required training, the Contract states that "WMATA staff will provide and conduct training on WMATA's mission, goals, drug and alcohol testing requirements, as well as, other areas of importance to WMATA." (*Id.*)

WMATA also exercised control over Transdev's employees' dress code. (*Id.*, Section 3.14.4.) Specifically, the Contract provides that "MetroAccess vehicle operators are required to wear uniforms," consisting of "a blue blouse or shirt with pocket, dark blue slacks or trouser, a dark baseball type cap (optional) and depending upon the season, a dark blue jacket and other dark blue outer garments." (*Id.*) WMATA also specified acceptable footwear and noted that "[t]ee-shirts, tank tops, jeans and shorts are prohibited." (*Id.*) The Contract states that "vehicle operators shall wear or display 'MetroAccess' insignia," and that the contractor's name shall not be displayed. (*Id.*) In addition to the Metro Access insignia on their clothing, vehicle operators were required to carry identification cards bearing the phrase "Providing Service for MetroAccess." (*Id.*)

WMATA's control over Transdev went well beyond issues of training and workplace attire. The Contract lays out in detail Transdev's reporting requirements to WMATA, as well as the procedure for Transdev to follow in its service delivery. The Contract specifies that Transdev would communicate with WMATA regarding service delivery through "Mobile Data Computer (MDC) Operations." (*Id.*, Section 3.14.7.) WMATA provided Transdev with "information regarding run and trip assignments for manifests through the MDC." (*Id.*, Section 3.14.8.) Transdev was required to "complete the manifest, performing each pick-up, drop-off, and other

stop in the sequence given" by WMATA. (*Id.*) Transdev was not permitted to deviate from the schedule sequence, which included "running errands and/or side trips for the customer that have not been scheduled." (*Id.*)

WMATA even exercised control over the interior conditions of Transdev vehicles during its service delivery. The Contract provides that "[v]ehicle operators shall announce stops for customers," and "use interior lighting of the vehicle at night to provide for a safe customer egress from the vehicle and shall not drop off customers into the path of traffic or at any location that would compromise the safety of customers or others." (*Id.*, Section 3.14.11.) WMATA also directed that Transdev's vehicle operators "shall operate heating and air conditioning systems so as to provide for the comfort of customers." (*Id.*) WMATA even controlled Transdev's ability to exercise discretion over opening windows for ventilation: "The vehicle operator is not authorized to open windows for ventilation in lieu of air conditioning unless vehicle air conditioning systems have failed." (*Id.*) WMATA also exercised control over Transdev's operators' conduct during the service delivery, providing that "[v]ehicle operators shall not smoke or operate any type of audio device" while driving, and prohibited the use of cell phones while vehicles are in operation. (*Id.*, Section 3.14.17.)

The contract between WMATA and Transdev makes clear that WMATA exercised a sufficient level of control over Transdev to make Transdev and Skipwith its agents. There is no evidence that would allow a reasonable jury to conclude otherwise.

For the foregoing reasons, WMATA's motion for partial summary judgment (ECF No. 102) is granted. At all times relevant to Plaintiffs' claims, Skipwith and Transdev were acting as WMATA's agents. Plaintiffs' claims against Transdev and Skipwith are dismissed with prejudice. Plaintiffs are directed to file an amended complaint naming WMATA as the sole

defendant within 30 days of the date of the Order accompanying this opinion. Plaintiffs' motion for partial summary judgment (ECF No. 103) is denied.

Because the Court has resolved the question of agency in WMATA's favor, Plaintiffs' motion to remand (ECF No. 104) is denied. WMATA properly removed the case to this Court pursuant to Md. Code, Transp. § 10-204(81).

### B. Default Judgment

Plaintiffs' motion for default judgment (ECF No. 105) is denied. While Rule 37 permits courts to "render[] a default judgment against [a] disobedient party," Skipwith is no longer a party to this case. It would not be appropriate to render default judgment against a non-party. In addition, because Skipwith was acting as WMATA's agent at the time of Mr. Golladay's injuries, Plaintiffs do not have a legitimate cause of action against her. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Plaintiffs' "exclusive remedy" is against WMATA. Md. Code, Transp. § 10-204(80). Accordingly, default judgment is not appropriate in this case.

### III. CONCLUSION

For the reasons set forth herein, the WMATA's Partial Motion to Dismiss and/or Summary Judgment (ECF No. 102) is **GRANTED**. Plaintiffs' claims against Defendants Carolyn Skipwith and Transdev Services, Inc. are **DISMISSED WITH PREJUDICE**. Plaintiffs' Motion for Partial Summary Judgment (ECF No. 103) is **DENIED**; Plaintiff's Motion to Remand (ECF No. 104) is **DENIED**; and Plaintiffs' Motion for Entry of Judgment by Default (ECF No. 105) is **DENIED**. An implementing Order follows.

November 16, 2018  /s/
Date  Timothy J. Sullivan
 United States Magistrate Judge